IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MURRAY LARSON, and<br>JOAN LARSON,<br><br>        Plaintiffs,<br><br>v.<br><br>TYSON FRESH MEATS, INC.,<br>formerly known as IBP, INC.,<br><br>        Defendant. | CASE NO. 8:00CV529<br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Partial Summary Judgment filed by Plaintiffs Murray and Joan Larson. (Filing No. 421). The Larsons seek summary judgment on their nuisance claim against the Defendant Tyson Fresh Meats, Inc. f/k/a IBP, Inc. ("IBP") based on an offensive, nonmutual use of the collateral estoppel doctrine. The Larsons contend that the doctrine bars IBP from relitigating several issues determined in the related case *Carol Marmo v. Tyson Fresh Meats*, 8:00cv527 (D. Neb. 2005) *aff'd*, 457 F.3d 748 (8th Cir. 2006). IBP opposes the motion (Filing No. 427).

The Nebraska Supreme Court has stated, "the applicability of the doctrine of collateral estoppel . . . constitutes a question of law." *Kopecky v. National Farms, Inc.*, 510 N.W.2d 41, 48 (Neb. 1994), citing *Petska v. Olson Gravel, Inc.*, 500 N.W.2d 828 (1993). Thus, it is for the Court to determine whether collateral estoppel in this case is appropriate.

**Analysis**

The Larsons assert that the doctrine of collateral estoppel bars IBP from re-litigating the existence of a nuisance in this case. "Under the doctrine of collateral estoppel, or issue preclusion, when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit." *Eicher v. Mid*

*America Financial Inv. Corp.,* 702 N.W.2d 792, 809 (Neb. 2005). The Nebraska Supreme Court has identified "four conditions that must exist for the doctrine of collateral estoppel to apply: (1) the identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action." *Kopecky,* 510 N.W.2d at 48. The Nebraska Supreme Court has also recognized that "[t]he doctrine of issue preclusion recognizes that limits on litigation are desirable, but a [party] should not be denied a day in court unfairly." *Vincent v. Peter Pan Bakers, Inc.*, 153 N.W.2d 849, 849 (Neb. 1967). It does not matter that the Larsons were not parties to the prior suit, as non-parties to the original judgment may raise collateral estoppel offensively against losing parties. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).

The Larsons argue that all four conditions are satisfied in this case, but IBP argues that the first and fourth conditions are not satisfied. Even if all the conditions were satisfied, IBP argues that the Court in its discretion should not permit offensive nonmutual collateral estoppel in this case because it would be fundamentally unfair to IBP.

The Larsons rely on *Kopecky* and argue that there are no significant factual differences between Marmo's case and their own case that might prevent the application of the collateral estoppel doctrine. In *Kopecky*, neighboring homeowners sued a swine-raising facility in separate actions based on claims of nuisance. The Nebraska Supreme Court addressed the issue of whether the Kopeckys were sufficiently "similarly situated" to the homeowners in the first litigation so that certain findings of fact in the first

2

homeowners' case should be applied as a matter of law. The court recognized that the first homeowners lived nearer to the swine-raising facility than did the Kopeckys, and in the opposite direction from it. The court determined, however, that the slight difference in wind frequency near the two homes and the small difference in distance from the two homes to the swine-raising facility did not constitute substantial factual differences necessitating re-litigation of the nuisance. *Id.* at 49-50. Based on this analysis, the court determined that whether the nuisance existed was a matter that should not have been presented to the jury in the Kopeckys' case, and that the defendants were bound by the prior determination that a nuisance existed.

The Larsons argue that the facts of their case are substantially identical to those raised in *Marmo*. They argue that their Complaint and Marmo's complaint assert the exact same causes of action; the cases were consolidated for all pretrial proceedings and, therefore, the procedural and substantive rulings made by the Court before trial apply to both lawsuits; the Larsons' home is actually closer to the wastewater treatment lagoons than Marmo's home; and IBP had a full and fair opportunity to examine and cross-examine witnesses as to the existence of the nuisance. The Larsons ask the Court to find IBP "legally responsible for paying" damages to them.

IBP argues that the issues are not identical, pointing to the following differences: 1) the nature and extent of the interference by IBP; 2) the ability of the Larsons to avoid the nuisance; and 3) the defenses available to IBP, for example, whether the Larsons came to the nuisance, which was a defense not available in *Marmo*. IBP argues that even if the Court determines that the issues are identical under Nebraska precedent, the Court should not apply the collateral estoppel doctrine because of the prejudicial effect of that

determination on IBP's defense of the action, specifically including its defense of the Larsons' negligence claim.

One of the elements of a nuisance claim is that a defendant's interference with a plaintiff's property is both intentional and unreasonable. I agree with the Larsons that IBP should be precluded from relitigating the fact that IBP released hydrogen sulfide into the air that interfered with some homeowners' use and enjoyment of their residential property. I find that the Larsons' residential property was located nearer to the location of IBP's wastewater treatment lagoons than was Marmo's residential property. Therefore, with regard to the Larsons' case, the doctrine of collateral estoppel precludes IBP from relitigating the issues of whether IBP released hydrogen sulfide into the air, whether the emissions interfered with the Larsons' use and enjoyment of their property, and whether that interference was intentional. However, I agree with IBP that it should be allowed to present to a jury the issue of whether its intentional interference with the Larsons' use and enjoyment of their property was unreasonable and, if a jury determines that it was unreasonable, whether the effects of IBP's interference with the Larsons' use and enjoyment of their property proximately caused the damage alleged by the Larsons.

In determining the reasonableness of a defendant's interference, a plaintiff must provide evidence of his or her particular complaints, and the jury must consider the seriousness of the damage weighed against the usefulness of the defendant's conduct. The seriousness of damage to the plaintiff is determined by the nature and extent of the damage suffered, including the degree and duration of the interference, and the ability of the plaintiff to avoid the damage and the burden of doing so.

4

The nature and extent of Marmo's damage was material to the jury's finding of a nuisance in her case, and I conclude that the nature and extent of the Larsons' alleged damage is sufficiently distinct from Marmo's damage that an offensive use of collateral estoppel is not permitted on those issues as a matter of law based on the lack of identity of issues.

Thus, with reference to the Jury Instruction No. 10 given in the *Marmo* case, I conclude that IBP should be precluded from re-litigating the following:

- First, that IBP in the operation of its wastewater treatment facility released hydrogen sulfide gas into the air;

- Second, that IBP's release of hydrogen sulfide gas interfered with the Larsons' use and enjoyment of their residential property;

- Third, that IBP's interference with the Larsons' use and enjoyment of their residential property was intentional.

I specifically do not preclude litigation related to whether IBP's interference was "unreasonable" as that term is defined in Jury Instruction No. 11 from the *Marmo* case, whether the Larsons suffered any damage that was proximately caused by IBP's conduct, and, if so, in what amount.  Thus, IBP's defense that the Larsons came to the nuisance is available in this case.

I have considered IBP's argument that the Court, in its discretion, should refuse to apply the doctrine of offensive, nonmutual collateral estoppel in this case because it fits within an exception articulated in *Parklane Hoisery Co. v. Shore,* 439 U.S. 322, 332 (1979) or is otherwise unfair.  In *Parklane*, the Supreme Court recognized that it would be unfair to apply the doctrine, for example, when a defendant had little or no incentive to

5

aggressively litigate the first case, where the results in prior case are inconsistent, and where there is some question as to the degree of confidence in the prior result's applicability to the latter case.  *Id.* at 331-21.  I find that none of these circumstances exists, and the risk of unfairness to IBP is absent.  Because a jury will be required to determine the degree of interference caused by IBP and to assess the Larsons' individual experience as related to the hydrogen sulfide emissions, I conclude that it is not unfair to IBP to preclude the re-litigation of the issues identified in the preceding paragraph. Moreover, I find that precluding re-litigation of these narrow issues will not unfairly prejudice IBP's defense of the Larsons' negligence claim, as the issues of proximate causation and damages remain to be decided by the jury.

    For all these reasons,

    IT IS ORDERED:

1. The Plaintiffs' motion for partial summary judgment based on collateral estoppel (Filing No. 421) is granted in part and denied in part as follows:

    The motion is granted in this matter as to the following facts:

    a)   In the operation of its wastewater treatment facility, IBP released hydrogen sulfide gas into the air;

    b)   IBP's release of hydrogen sulfide gas interfered with the Larsons' use and enjoyment of their residential property; and

    c)   IBP's interference with the Larsons' use and enjoyment of their residential property was intentional;

    and the motion is denied in all other respects as to all other issues; and

2. Counsel are ordered to appear in chambers for a pretrial conference with the undersigned on Wednesday, January 10, 2007, at 3 p.m. The conference will be for the purpose of reviewing the final pretrial order in this matter and to make any adjustments to it as are necessary. Counsel are advised to contact my courtroom deputy or judicial assistant to confirm their availability.

DATED this 13th day of December, 2006.

                                            BY THE COURT:

                                            s/Laurie Smith Camp
                                            United States District Judge